Mary K. Farady-Sultze, Plaintiff-Appellant,

v.

Aurora Medical Center of Oshkosh, Inc.,
Defendant-Respondent.

Court of Appeals

*No. 2009AP2429. Submitted on briefs April 22, 2010.
—Decided June 2, 2010.*

2010 WI App 99

(Also reported in 787 N.W.2d 433.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel M. Muza* of *Reff, Baivier, Bermingham & Lim, S.C.* of Oshkosh.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mary Pat Ninneman, Sean M. Scullen* and *C. Ann Martin* of *Quarles & Brady, LLP* of Milwaukee.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. BROWN, C.J. Aurora Medical Center of Oshkosh, Inc., fired Mary K. Farady-Sultze from her job

after discovering that it had mistakenly overpaid her for a period between June 13, 2008, and October 13, 2008, and concluding that Farady-Sultze kept those overpayments to herself. Farady-Sultze sued Aurora, noting that an exception to Wisconsin's employee-at-will doctrine occurs when the termination violates public policy. She claimed that the firing was contrary to WIS. STAT. § 103.455 (2007–08)[1] (outlining the process due before an employer may deduct wages for faulty workmanship, loss, theft or damage). But we hold that Aurora did not run afoul of this statute, which is designed to offer certain protections for an employee who has *earned* wages taken away. Here, Farady-Sultze never earned the extra payments; the statute does not protect her. We also reject her intentional infliction of mental distress and defamation claims and affirm.

## BACKGROUND

■

¶ 2.  This appeal is, technically speaking, a review of the circuit court's grant of a motion to dismiss the complaint. In such circumstances, this court's examination would be limited to the allegations in the complaint. *Noonan v. Northwestern Mut. Life Ins. Co.*, 2004 WI App 154, ¶ 30, 276 Wis. 2d 33, 687 N.W.2d 254. But where a circuit court considers matters outside the complaint, we may treat the appeal as though it were from a summary judgment. *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 2, 296 Wis. 2d 273, 722 N.W.2d 633. The circuit court in this case considered not only the complaint, but all the pleadings and briefs of both parties, in rendering its

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

decision. The briefs included attachments such as the appeal tribunal decision from Farady-Sultze's unemployment compensation hearing. So, we will consider the briefs and attachments as well. Because the facts contained within the tribunal decision are undisputed and provide the proper background for discussion of this case, we will use those facts.

¶ 3. Farady-Sultze was employed as a social worker for Aurora. She was paid every two weeks via automatic deposit. She worked at both Aurora's Wautoma and Oshkosh locations for a period of time. She worked sixteen hours per pay period at the Wautoma location. As of May 24, 2008, she stopped working at the Wautoma location. But her supervisor in Wautoma failed to remove her from the payroll for that location. So, on her paychecks from June 13, 2008, through October 31, 2008, she was paid for sixteen hours of work every pay period at the hourly rate of $19.75 that she did not perform. This pay was in addition to the pay that she received for the hours that she actually worked at the Oshkosh location.

¶ 4. On or about November 11, 2008, Aurora discovered its error. It suspended Farady-Sultze pending an investigation. On November 18, Aurora terminated her. At the unemployment compensation hearing, Aurora's contention was that she knew she was being paid more than she should and yet did not bring the error to Aurora's attention. Farady-Sultze countered that she did not know she was being paid incorrectly; she was not required to enter her work hours for a pay period as those were entered by the employer's staff. And she claimed that, even though she did have access to an electronic copy of her paycheck stubs, she did not receive a paper copy every two weeks. Those are the pertinent facts.

¶ 5.   Independent of her unemployment compensation claim, she brought this action. She claimed that she was wrongfully terminated and that, although Wisconsin is a termination-at-will state, our courts will allow wrongful termination actions to proceed if the employer has terminated an employee in violation of some recognized state policy. She also claimed, inter alia, intentional infliction of emotional distress and defamation. The circuit court granted Aurora's motion to dismiss which we are reviewing as though it was a summary judgment. We will conduct a de novo review because the issues are issues of law and the facts are undisputed. *See Gielow v. Napiorkowski*, 2003 WI App 249, ¶ 12, 268 Wis. 2d 673, 673 N.W.2d 351.

## DISCUSSION

■■

¶ 6.   It has long been the law in Wisconsin that employees are terminable at will, for any reason, without cause and with no judicial remedy. *See Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 12, 241 Wis. 2d 700, 623 N.W.2d 739. So, it matters not that she claims her inaction was unintentional in that she just did not pay close attention to her pay stubs. It also matters not that Aurora decided to fire her rather than ask that the money be paid back. Aurora can fire her for any reason, reasonable or not.

¶ 7.   Knowing that this is the law in Wisconsin, she tried to convince the circuit court, as she tries to convince this court, that she falls under the very narrow exception to the employee-at-will doctrine. That doctrine was explained as follows by our supreme court:   "an employee has a cause of action for wrongful discharge when the discharge is contrary to a funda-

mental and well-defined public policy." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572–73, 335 N.W.2d 834 (1983). She does so by hitching her wagon to the statute successfully invoked by the plaintiff in *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 384 N.W.2d 325 (1986).

¶ 8.    *Wandry* involved a woman who was employed as a cashier for a credit union. *Id.* at 39. She cashed a stolen check and the credit union demanded that she reimburse the credit union for its loss. *Id.* When she refused, the credit union fired her. *Id.* at 40. She brought a wrongful termination suit and argued that she satisfied the narrow exception to the employee-at-will doctrine because the credit union had violated Wis. Stat. § 103.455, which she asserted was an expression of Wisconsin public policy. *Wandry*, 129 Wis. 2d at 43. The supreme court agreed and Wandry won her case. *Id.* at 47–49. Because Farady-Sultze asserts that the same statute applies in her case, we will undertake close examination of that statute. The pertinent part of § 103.455 states as follows:

> No employer may make any deduction from the wages due or earned by any employee . . . for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make that deduction or unless the employer and a representative designated by the employee determine that the . . . theft . . . is due to the employee's negligence, carelessness, or willful and intentional conduct, or unless the employee is found guilty or held liable in a court of competent jurisdiction . . . .

■■

¶ 9.    The intent of the statute is quite clear. Once the employee *earns* wages, that employee is protected from having the employer deduct those earned wages

on charges that the employee was responsible for defective or faulty workmanship, or lost or stolen property or damaged property unless one of three things occur: (1) the employee agrees in writing to the deduction, (2) the employer and a representative designated by an employee determines that the employee is responsible, or (3) that the employee's responsibility is found after court proceedings. The public policy goal of the statute is to prevent the employer from arbitrarily deducting hard earned wages at its prerogative. The statute accords a method of due process.

¶ 10.   Farady-Sultze does not begin to come under the statute. She never earned that sixteen hours of wages in Wautoma every pay period after she was reassigned. So, the goal of the statute, to protect *earned* wages, never came into play. Moreover, the purpose of the statute is to prevent unauthorized deduction from earned wages. There was no deduction of earned wages here. Therefore, despite her claim that she simply did not know that she was getting more wages than she was supposed to, the fact remains that her claim is not protected by public policy.

¶ 11.   One issue remains—or should we say, one issue with two parts remains. In addition to her wrongful termination claim, Farady-Sultze also claimed that Aurora intentionally inflicted emotional distress on her and, in a separate claim, that Aurora defamed her. To both of these claims, the circuit court held that they were barred by the exclusivity provision of the Worker's Compensation Act, WIS. STAT. § 102.03. On appeal, Farady-Sultze challenges the use of the exclusivity provision by the circuit court. While she acknowledges that "an action for infliction of emotional distress arising in the scope of employment is barred by the exclusivity provision of the Worker's Compensation

117

Act," she claims that such an action may not be barred when the injuries arise in the context of termination rather than employment. She cites an unpublished opinion by a federal district court, *Keenan v. Foley Co.*, 35 FEP Cases 937 (E.D. Wis. 1984), to say that the exclusivity provision in the Worker's Compensation Act does not apply when the act is done in the context of termination rather than employment.

■

¶ 12.   We have a few responses to that. First, the obvious one. We are not bound by federal court decisions in civil cases which attempt to construe state law. *Johnson v. Crawford County*, 195 Wis. 2d 374, 383, 536 N.W.2d 167 (Ct. App. 1995). Second, *Keenan* was decided in 1984, long before relevant appellate cases by our supreme court and court of appeals were written, so the district judge had no guidance. Third, now on the books is *Jenson v. Employers Mutual Casualty Co.*, 161 Wis. 2d 253, 257, 468 N.W.2d 1 (1991), which held that the tort of intentional infliction of mental distress is barred by the exclusivity provision of the Worker's Compensation Act. While it is true that the acts in *Jenson* occurred during employment and not after termination, the *Jenson* court did not make or discuss the distinction that Farady-Sultze now raises. *See id.* at 261–63. We are bound by *Jenson*. Fourth, even if we were to accept Farady-Sultze's qualification of *Jenson* on the law, she would still lose on the facts. Farady-Sultze claims that the investigation process and the conclusion that she was guilty of theft were what caused her this emotional distress. All of this happened while she was still employed and before termination. So, even assuming arguendo that a distinction to *Jenson* exists, it is not found on the facts here.

¶ 13. Her defamation claim also fails. She contends that Aurora expressly informed her that, pursuant to Aurora policy, it would affirmatively disclose to potential employers the reason for termination (theft). But, we held, in *Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 418, 456 N.W.2d 888 (Ct. App. 1990), and then again in *Wolf v. F & M Banks*, 193 Wis. 2d 439, 455, 534 N.W.2d 877 (Ct. App. 1995), that defamation claims by an employee against an employer are preempted by the Worker's Compensation Act. And, we note that, in *Wolf*, the claimed defamation occurred after discharge, which is similar to what Farady-Sultze alleges is the case here. *See Wolf*, 193 Wis. 2d at 447–48. We say "similar" because the argument is similar. But the facts are not similar. In *Wolf*, the claim was that the defamation, broadcasting the reason for his firing, was alleged to have actually occurred. *Id.* Here, Farady-Sultze cannot point to any fact showing that Aurora has actually carried through with its stated policy decision to affirmatively disclose the reason for her firing to potential employers. In other words, if there is to be such an allegation of defamation, there is no evidence that it has occurred yet or that it ever may occur. For all these reasons, her defamation claim was properly dismissed. We affirm in total.

*By the Court.*—Order affirmed.