Gene ANDERSON, Plaintiff-Appellant,

v.

Duane HEBERT and County of Barron,
Defendants-Respondents.†

Court of Appeals

*No. 2010AP1992. Submitted on briefs February 22, 2011.
—Decided March 15, 2011.*

2011 WI App 56

(Also reported in 798 N.W.2d 275.)

† Petition for Review denied 5/24/11.

432

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Peter M. Reinhardt* and *Bridget M. Finke* of *Bakke Norman, S.C.*, Menomonie.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Oyvind Wistrom* and *James R. Scott* of *Lindner & Marsack, S.C.*, Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.  Gene Anderson is a former employee of Barron County. He claims that, after he left his employment, Duane Hebert, the county administrator, defamed him. The circuit court concluded Anderson's exclusive remedy was under the Worker's Compensation Act. It therefore granted summary judgment dismissing Anderson's defamation claim. However, because Anderson was no longer a County employee when the alleged defamatory statements were made, we conclude the Worker's Compensation Act is not Anderson's exclusive remedy. We also conclude genuine issues of material fact remain regarding whether the allegedly defamatory statements were substantially true and whether they were made with actual malice. We therefore reverse.

## BACKGROUND

¶ 2.  Anderson was employed as the Barron County highway department's patrol superintendent. Pursuant to a service contract with the State of Wisconsin, the County was responsible for routine maintenance and snow removal on various state-owned roads. The state paid a higher reimbursement rate when the

435

County used large trucks or snowplows, and a lower rate when the County used pickup trucks or other small equipment.

¶ 3. In late November 2007, highway department employees Todd Huset and Bradley Thompson complained to Hebert, the county administrator, about the department's operation. Among other things, they told Hebert that Anderson had instructed them to use pickup trucks to maintain state roads but to report that they had used larger equipment. This practice would allow the County to take advantage of the state's higher reimbursement rate, while actually using equipment that is less costly to operate.

¶ 4. After meeting with Huset and Thompson, Hebert placed Anderson on administrative leave pending an investigation into the highway department's reimbursement practices. The County and state then performed audits, which concluded the County had overcharged the state for highway maintenance. Hebert met with Anderson and gave him a choice between resigning or facing possible termination. Anderson chose to resign.

¶ 5. Shortly after Anderson resigned, Hebert made a number of statements to the local media and in an open meeting of the county board. For example, one newspaper article quoted Hebert as saying that the County placed Anderson on leave after discovering discrepancies in road maintenance fees charged to the state. According to another article, "Hebert stated that [Anderson] allegedly told county workers to incorrectly fill out reimbursement forms, which resulted in the state paying higher amounts to the county." At a county board meeting, Hebert stated, "The [state audit], along with additional information collected, proves not only the failure of management responsibilities, but also the

unethical and irresponsible direction of falsification of official documents hundreds of times in the past year."

¶ 6. Anderson sued the County for breach of contract, conversion and misappropriation, and defamation. The County moved for summary judgment, which the circuit court granted as to all but the defamation claim. The County later moved for reconsideration on the defamation claim, based on our decision in *Farady-Sultze v. Aurora Medical Center*, 2010 WI App 99, 327 Wis. 2d 110, 787 N.W.2d 433. The County argued *Farady-Sultze* stands for the proposition that the Worker's Compensation Act provides the exclusive remedy for defamation by an employer, even if the defamation occurs after the employee has been terminated. The circuit court agreed and dismissed Anderson's defamation claim. Anderson now appeals.[1]

## DISCUSSION

[1, 2]

¶ 7. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hocking v. City of Dodgeville*, 2009 WI 70, ¶ 7, 318 Wis. 2d 681, 768 N.W.2d 552. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Wis. Stat. § 802.08(2).[2] We construe the facts and all reasonable inferences in the nonmoving party's favor. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 32, 237 Wis. 2d 19, 614 N.W.2d 443.

---

[1] Anderson appeals only the dismissal of his defamation claim.

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

437

## I. Worker's Compensation Act

¶ 8. The circuit court concluded the Worker's Compensation Act's exclusive remedy provision bars Anderson's defamation claim. This is an issue of statutory interpretation, which we review independently. *Lentz v. Young*, 195 Wis. 2d 457, 468, 536 N.W.2d 451 (Ct. App. 1995). Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the words in the statute is plain and unambiguous, our analysis goes no further. *Id.*

¶ 9. We conclude the language of the Act is plain and unambiguous. The Act's exclusive remedy provision states that, where an injury is covered by the Act, "the right to the recovery of compensation under [the Act] shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." WIS. STAT. § 102.03(2). An injury is covered by the Act where certain conditions are present. *See* WIS. STAT. § 102.03(1).

¶ 10. As relevant here, an injury is only covered if, at the time of the injury: (1) both the employer and employee are subject to the provisions of the Act; and (2) the employee is performing service growing out of and incidental to his or her employment. WIS. STAT. § 102.03(1)(b)-(c)1. It is undisputed that the injury to Anderson—the alleged defamation—did not occur until after Anderson resigned. Thus, at the time of the injury, Anderson was not the County's employee and was not subject to the provisions of the Act. *See* WIS. STAT.

§ 102.03(1)(b). Furthermore, because he had already resigned, Anderson was not "performing service growing out of and incidental to his . . . employment" at the time of the injury. *See* Wis. Stat. § 102.03(1)(c)1. Anderson's injury therefore is not covered by the Act. Consequently, the Act's exclusive remedy provision does not bar his defamation claim.

¶ 11. Despite the plain language of the Act, the County cites two cases for the proposition that the Act is Anderson's exclusive remedy: *Wolf v. F & M Banks*, 193 Wis. 2d 439, 534 N.W.2d 877 (Ct. App. 1995), and *Farady-Sultze*, 327 Wis. 2d 110. In *Wolf*, the plaintiff sued his former employer for defamation arising from two sources: (1) a letter prepared during his employment that accused him of sexual harassment; and (2) post-termination statements that he had been fired for engaging in sexual harassment. *Wolf*, 193 Wis. 2d at 447–48. Although some of the defamatory statements were made after Wolf's termination, we nevertheless affirmed dismissal of his claim based on the Act's exclusive remedy provision. *Id.* at 455–56. However, we did not address the timing of the defamatory statements, nor did we analyze whether the exclusive remedy provision applies to post-termination injuries. Rather, the issue we addressed in *Wolf* was whether, as a general principle, defamation is an injury contemplated by the Act. We noted, "Wolf's appellate argument is limited to his challenge to the court of appeals decision in *Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 465 N.W.2d 888 (Ct. App. 1990)." *Id.* at 455 n.6. The import of our decision in *Wolf* was to reaffirm *Becker's* holding that the Act covers pre-termination defamation. *Id.* at 455–56; *see also Becker*, 156 Wis. 2d at 418. *Wolf* does not control the dispositive question in this case—whether the Act covers post-termination defamation.

¶ 12. In *Farady-Sultze*, the plaintiff sued her former employer for defamation, based on the employer's policy of affirmatively disclosing the reason for an employee's termination to prospective employers. *Farady-Sultze*, 327 Wis. 2d 110, ¶ 13. We affirmed the dismissal of Farady-Sultze's claim because there was no evidence her employer actually carried through with its policy by disclosing the reason for her termination. *Id.* We stated, "In other words, if there is to be such an allegation of defamation, there is no evidence that it has occurred yet or that it ever may occur." *Id.* The County points out we also "note[d] that, in *Wolf*, the claimed defamation occurred after discharge, which is similar to what Farady-Sultze alleges is the case here." *Id.* However, we went on to indicate that the two cases were factually distinguishable and that our holding in *Farady-Sultze* was based on the total lack of evidence that defamation actually occurred. *Id.* Consequently, *Farady-Sultze* does not compel us to conclude the Act's exclusive remedy provision bars post-termination defamation claims.

¶ 13. The County also contends Wisconsin courts have applied the exclusive remedy provision to bar claims arising from post-termination injuries other than defamation. The County principally relies on *Pederson & Voechting v. Kromrey*, 201 Wis. 599, 231 N.W. 267 (1930). There, Kromrey was terminated on a Saturday afternoon. *Id.* at 600. He returned to his former employer's premises on Monday morning to receive his paycheck and collect his tools. *Id.* While there, he slipped and fell, injuring his foot. *Id.* On appeal, the issue was "whether, under these circumstances, the relation of employer and employee existed" so that Kromrey was entitled to worker's compensation benefits. *Id.* at 600–01. Our supreme court held

Kromrey was not an employee at the time of the injury because he returned to the workplace for his own personal convenience. The court stated, "If the [employment relationship] does exist, it must appear that the errand of the employee was not merely for his personal convenience, but that his presence there was referable to his contract of employment, and in some measure, in obedience to his contractual obligation." *Id.* at 604. Anderson alleges he was defamed after he resigned from his employment and his injury was not incurred "in obedience to his contractual obligation." *See Id.* Thus, *Pederson & Voechting* actually supports Anderson's position that post-termination defamation is not covered by the Act and therefore is not subject to the exclusive remedy provision.[3]

---

[3] The County also states the Act covers post-termination injury:

> ... in other cases where an injury occurred after the end of the employment relationship, but there remained a sufficient nexus between the employment relationship and the resulting injury. *See Secor v. LIRC*, [2000 WI App 11,] 232 Wis. 2d 519, 606 N.W.2d 175 (Ct. App. 1999); *Hackley-Phelps-Bonnell [Co.] v. Industrial [Comm'n]*, 165 Wis. 586, 591–92, 162 N.W. 921 (1917).

However, neither of the cases the County cites involved post-termination injury. In *Secor*, the plaintiff was injured in a car accident between visits to clients while traveling to his employer's premises for the sole purpose of picking up his paycheck. *Secor*, 232 Wis. 2d at 525–26. The *Secor* court never indicated the plaintiff had been terminated or that the paycheck he was picking up was his final paycheck. Similarly, in *Hackley-Phelps-Bonnell*, the plaintiff was injured while traveling to pick up his paycheck, but the court never indicated that he was picking up his final paycheck. *Hackley-Phelps-Bonnell*, 165 Wis. at 586. Instead, the court's opinion states the plaintiff was "going to take a vacation" and was "through with his work . . . [until] he came back again." *Id.* at 586–87. Consequently, neither *Secor* nor *Hackley-Phelps-Bonnell* is on point. The

## II. Substantial truth

¶ 14.  As an alternative ground for affirming the summary judgment, the County argues Hebert's statements about Anderson were substantially true. By definition, a defamatory statement must be false. *Hart v. Bennet*, 2003 WI App 231, ¶ 21, 267 Wis. 2d 919, 672 N.W.2d 306. Truth is an absolute defense to a defamation claim. *See Lathan v. Journal Co.*, 30 Wis. 2d 146, 158, 140 N.W.2d 417 (1966). It is not necessary that the "statement in question be true in every particular. All that is required is that the statement be substantially true." *Id.*

¶ 15.  The County points out that Anderson has admitted the truth of some of Hebert's statements. For instance, in his deposition, Anderson admitted it was true that the County began investigating him after discovering discrepancies in maintenance fees charged to the state. Anderson also conceded the truth of Hebert's statement that "[highway department] workers reported that they were told to falsely record using machinery for state highway work that yielded more reimbursement from the state."

¶ 16.  However, Hebert made other allegedly defamatory statements whose truth Anderson has not admitted. For example, in one newspaper article Hebert was quoted as saying that the highway department's management personnel were aware of the reimbursement discrepancies and actually directed workers to falsely report the equipment they used. According to

County's reference to *Jenson v. Employer's Mutual Casualty Co.*, 161 Wis. 2d 253, 468 N.W.2d 1 (1991), is similarly unavailing because the injuries in that case also occurred before the plaintiff's termination. *See Jenson*, 161 Wis. 2d at 257–60.

another article, "Hebert stated that [Anderson] alleg-edly told county workers to incorrectly fill out reim-bursement forms, which resulted in the state paying higher amounts to the county." Elsewhere, Hebert re-ferred to Anderson as having "allegedly cheated the state." Hebert "guess[ed]" that Anderson did so to pad his budget and leave behind a legacy of success. As the County concedes, Anderson disputes the truth of any statements regarding his own responsibility for the reimbursement discrepancies.

¶ 17. The County nevertheless argues Hebert's statements were substantially true because they were "supported by reports from County employees." How-ever, mere allegations by County employees do not prove that Hebert's statements were true. Anderson denies the truth of the employees' allegations and calls into question their motivation for reporting.

¶ 18. The County also suggests Hebert's state-ments were substantially true because they were con-firmed by the audits. Anderson concedes the audits concluded the County overcharged the state, but he notes that neither audit accused him of misconduct or fraud. Thus, the audits do not support Hebert's state-ments that Anderson "cheated the state," directed em-ployees to falsify records, and engaged in "unethical and irresponsible" conduct.

██

¶ 19. The County further contends Hebert's state-ments were substantially true because they were couched in language of speculation or were qualified by the word "allegedly." However, "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs . . . . 'One may be libeled by implication and innuendo quite as easily as by direct affirmation.' " *Converters Equip.*

*Corp. v. Condes Corp.*, 80 Wis. 2d 257, 263–64, 258 N.W.2d 712 (1977) (quoting *Frinzi v. Hanson*, 30 Wis. 2d 271, 277, 140 N.W.2d 259 (1966)).

¶ 20.   On the whole, the County attempts to parse out individual pieces of Hebert's statements, support the truth of each piece, and then conclude the entire statement is true. This approach ignores the rule that an allegedly defamatory statement "must be interpreted in light of the overall context in which it was made." *Denny v. Mertz*, 106 Wis. 2d 636, 662, 318 N.W.2d 141 (1982). Individual words and elements in an article "may not be viewed in isolation, but must be considered in context in relation to the whole." *Westby v. Madison Newspapers, Inc.*, 81 Wis. 2d 1, 6, 259 N.W.2d 691 (1977). When considered in context, the truth of Hebert's statements is disputed. Accordingly, summary judgment would be inappropriate.

## III.   Actual malice

¶ 21.   Alternatively, the County contends summary judgment is warranted because Anderson cannot prove Hebert's statements were made with actual malice. *See Storms v. Action Wis., Inc.*, 2008 WI 56, ¶ 38, 309 Wis. 2d 704, 750 N.W.2d 739 (when a public figure asserts a defamation claim, he or she must prove the allegedly defamatory statement was made with actual malice). Anderson concedes he is a limited purpose public figure[4] and therefore must prove actual malice to

_____

[4] A general purpose public figure is one who occupies a position of "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Gertz v. Robert*

recover. However, he argues a genuine issue of material fact remains regarding whether Hebert acted with actual malice.

¶ 22.   A defendant acts with actual malice when he or she either knows a statement is false or makes the statement with reckless disregard for its truth or falsity. *Erdmann v. SF Broad.*, 229 Wis. 2d 156, 169, 599 N.W.2d 1 (Ct. App. 1999). To establish reckless disregard, a plaintiff "must show that the defendant in fact entertained serious doubts as to the publication's truth." *Id.* at 169–70. This does not mean that a defendant can escape liability simply by claiming he or she believed a statement was true. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). In certain instances, a jury may infer doubts about a statement from circumstantial evidence. *See id.* Specifically, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.*

¶ 23.   Here, a reasonable jury could conclude Hebert had reason to doubt the veracity of Huset and Thompson's allegations. Huset and Thompson conceded their primary reason for reporting to Hebert was that they wanted to be transferred off of the night shift. Their motivation could have prompted Hebert to question whether their allegations were true. Moreover, Huset and Thompson waited over ten months to report Anderson's alleged misconduct. When they did report,

*Welch, Inc.*, 418 U.S. 323, 351–52 (1974). In contrast, an otherwise private individual becomes a limited purpose public figure when he or she is more than tangentially involved in a public controversy and the alleged defamation is germane to his or her participation in the controversy. *Erdmann v. SF Broad.*, 229 Wis. 2d 156, 165, 599 N.W.2d 1 (Ct. App. 1999).

they went directly to Hebert and to the County's finance director, rather than going up the highway department's chain of command. They never reported any concerns to their union representative, who asserted he would have taken immediate action had he known about the alleged falsification. Based on these facts, a jury could conclude Hebert had reason to doubt the truth of Huset and Thompson's allegations and acted with actual malice by repeating those allegations to the press.

¶ 24.   Furthermore, the county and state audits could support a finding of actual malice. Speaking to the press and the county board, Hebert stated that Anderson "allegedly cheated the state," directed employees to falsify records, and acted unethically. Neither audit reached these conclusions or used these words. While the audits determined the County owed the state money, they did not conclude that any fraud had taken place, nor did they blame Anderson for the reimbursement discrepancies. Thus, a jury could conclude Hebert acted with reckless disregard for the truth or falsity of his statements when he accused Anderson of cheating the state and blamed Anderson for directing employees to falsify records.

¶ 25.   A jury could also find actual malice based on Hebert's behavior. After Huset and Thompson accused Anderson of misconduct, Hebert chose not to question Anderson about the allegations. Nor did he speak to the highway department's shop superintendent. Had he done so, he would have learned that the superintendent never heard Anderson instruct employees to falsify records and never received any reports from employees that Anderson had directed them to do so. On these facts, a reasonable jury could conclude Hebert failed to adequately investigate Huset and Thompson's allega-

446

tions, and therefore acted with reckless disregard for their truth or falsity when he repeated them to the press.

¶ 26. Overall, there is evidence for a jury to conclude Hebert's statements about Anderson were made with actual malice. Accordingly, genuine issues of material fact make summary judgment on this basis inappropriate.

*By the Court.*—Judgment reversed.