Marc J. ACKERMAN, Plaintiff-Appellant,

v.

Malcolm K. HATFIELD, Defendant-Respondent.†

Court of Appeals

*No. 04–1008. Submitted on briefs October 21, 2004.—Decided November 24, 2004.*

2004 WI App 236

(Also reported in 691 N.W.2d 396.)

† Petition to review denied 3-8-2005.

859

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert L. Elliott*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kevin J. Lyons* and *Smitha Chintamaneni* of *Davis & Kuelthau, S.C.*, Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J.   Marc J. Ackerman, Ph.D., appeals from a summary judgment entered in favor of Malcolm K. Hatfield, M.D. Dr. Ackerman contends that the circuit court erred when it decided issues of material fact without the benefit of a trial. We agree and reverse the summary judgment.

## FACTS

¶ 2.   The current action is but the latest in a ten-year history of litigation involving these two parties. An overview of this history is necessary to place the current case in context. The interaction between the parties began in 1993 when Dr. Hatfield's wife filed for divorce. In that proceeding, Dr. Ackerman, a licensed clinical psychologist, served as the expert for the guardian ad litem of the Hatfields' minor daughter. In his

report, Dr. Ackerman opined that Dr. Hatfield had been involved in inappropriate family behavior and recommended, among other things, that there be restraining orders in place to prohibit Dr. Hatfield from having contact with his wife and daughter.

¶ 3. Dr. Hatfield then engaged in a letter-writing campaign to discredit Dr. Ackerman. He wrote to Attorney Michael Phegley, the guardian ad litem, promising to sue Dr. Ackerman for malpractice and repeated this accusation in letters to a variety of recipients, including: Governor James E. Doyle (who at that time was Wisconsin's Attorney General), various doctors in the Milwaukee area, the Family Court Counseling Service of Racine, and the Wisconsin Committee on Child Support, Custody and Visitation. Dr. Hatfield also created a self-styled news release in which he alleged that Dr. Ackerman and the Racine County Family Court conspired to remove Dr. Hatfield's daughter from the home, harmed his daughter by doing so, and were "well paid for their efforts." Dr. Hatfield addressed the release to "Legislators, Editors, County Executives."

¶ 4. In January 1996, Dr. Hatfield filed a lawsuit against Dr. Ackerman, alleging fraud, breach of contract, malpractice, and intentional infliction of emotional distress. Six months later the circuit court granted summary judgment in favor of Dr. Ackerman, holding that Dr. Hatfield and his attorney had commenced the action for the sole purpose of harassing Dr. Ackerman. We affirmed the disposition on appeal, and our supreme court denied Dr. Hatfield's petition for review.

¶ 5. Dr. Hatfield continued to publish materials attacking Dr. Ackerman's competence and ethics, including a Web posting that accused Dr. Ackerman of malpractice and of violating all professional codes of

conduct. In April 2001, Dr. Ackerman filed a lawsuit against Dr. Hatfield, alleging libel and slander, negligence, malicious prosecution, and conspiracy to damage business reputation. The matter settled in March 2002 when Dr. Hatfield agreed to pay $90,000 and Dr. Ackerman agreed to dismiss all claims pending at the time.

¶ 6. Dr. Hatfield filed a complaint against Dr. Ackerman with the Wisconsin Department of Regulation and Licensing (DRL) in July 2002. The case was assigned to the Wisconsin Psychology Examining Board and investigated by the DRL's Division of Enforcement. The case against Dr. Ackerman was closed when the board determined there had been no violation.

¶ 7. On September 6, 2002, Dr. Hatfield sent a letter to Attorney Phegley disputing certain unpaid guardian ad litem fees. In this letter, Dr. Hatfield stated that Dr. Ackerman had filed an unsuccessful defamation suit and that he had "dropped his claim after he knew he would lose the pending jury trial. This is a de facto admission that [Dr. Ackerman] did indeed commit malpractice." Dr. Hatfield copied this letter to Racine County Circuit Court Judge Richard Kreul, Racine County Family Court Commissioner Kevin Van Kampen, and Wisconsin State Assembly Representative Bonnie Ladwig.

¶ 8. Dr. Ackerman filed suit against Dr. Hatfield for the second time on January 31, 2003. He alleged defamation arising from the September 6, 2002 letter to Attorney Phegley and abuse of process and malicious prosecution based on the DRL complaint. Dr. Hatfield moved for summary judgment, which the circuit court granted, and Dr. Ackerman appeals.

## DISCUSSION

### *Standard of Review*

¶ 9.   Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2001–02).[1] We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). When reviewing a summary judgment, we employ the same methodology as the circuit court and our review is de novo. *Gross v. Woodman's Food Mkt., Inc.*, 2002 WI App 295, ¶ 30, 259 Wis. 2d 181, 655 N.W.2d 718, *review denied*, 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 100 (No. 01–1746). Where the complaint states a claim for relief and the answer joins issue, we then look to the affidavits to determine whether there are any issues of material fact that would entitle the opposing party to a trial. *Id.* Any reasonable doubt as to the existence of a factual issue must be resolved against the party moving for summary judgment. *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980).

### *Statutory Immunity for Good-Faith Filings*

¶ 10.   Dr. Hatfield's motion for summary judgment to dismiss Dr. Ackerman's abuse of process and malicious prosecution claims relied on the statutory immunity found in Wis. Stat. § 440.042(2), which states in relevant part:

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

> Any person who in good faith . . . provides the department or any examining board, affiliated credentialing board or board in the department with . . . information on a matter relating to the regulation of a person holding a credential is immune from civil liability for his or her acts or omissions in testifying or otherwise providing such advice or information. The good faith of any person specified in this subsection shall be presumed in any civil action and an allegation that such a person has not acted in good faith must be proven by clear and convincing evidence.

Dr. Hatfield asserts that the circuit court properly concluded that immunity attached and granted summary judgment because "there is some evidence to support Dr. Hatfield's 'good faith' complaint to the DRL" and therefore no genuine issue of material fact is left to be decided. "Good faith" is a state of mind evidencing "honesty in belief or purpose [or] absence of intent to defraud or to seek unconscionable advantage." BLACK'S LAW DICTIONARY 713 (8th ed. 2004). To demonstrate that his complaint was filed in good faith, Dr. Hatfield asserts that he relied on the opinions of experts when filing it. He further asserts that he filed the complaint with the belief that his experts considered Dr. Ackerman's work in the original divorce case to constitute malpractice.

¶ 11. Dr. Ackerman responds that he is entitled to the opportunity to rebut the presumption of good faith. He is correct. The statute allows him the opportunity to prove by clear and convincing evidence that Dr. Hatfield did not act in good faith. WIS. STAT. § 440.042(2). Dr. Ackerman submits that he has presented sufficient evidence to demonstrate that a genuine issue of fact exists regarding Dr. Hatfield's good faith. Our review of the record supports Dr. Ackerman's position.

¶ 12. The contentious history between the parties, including Dr. Hatfield's published materials attacking Dr. Ackerman's competence and ethics, the lawsuits filed by the parties, and the timing of Dr. Hatfield's DRL complaint (just months after the defamation settlement), raises questions regarding Dr. Hatfield's motive for filing the DRL complaint. Further questions arise when we consider the divorce court's finding that:

> [Dr. Hatfield is] an angry person who because of his occupation and money can threaten and intimidate to achieve his own purposes, who has a negative, condescending view of law and authority and who places his interests above all else. Such portrait is a composite of the in-court demeanor on and off the witness stand, his appearance and statements on the videotapes, his multiple letters, and his disregard of Court orders.

We see this echoed in Dr. Hatfield's 1996 lawsuit against Dr. Ackerman, where the court stated:

> [Dr. Hatfield] is out for blood, that is the impression I get, and everyone else be damned. He's going to go after anyone, anyone that gets in his way .... That's a vindictive approach to the use of the process of law. And to me if that's not a fraud on the Court, I don't know what it is .... This was an action brought for the sole purpose of getting back at Dr. Marc J. Ackerman, to put him through the hoops.

¶ 13. Dr. Hatfield hired several experts to review Dr. Ackerman's work, including Dr. Richard Gardner, M.D., Dr. Ralph Underwager, Ph.D., and Dr. Timothy Caufield. He argues that his reliance on experts to support the DRL complaint demonstrates his good-faith filing and clinches his immunity.

¶ 14. Dr. Ackerman contends that the experts named by Dr. Hatfield had been discredited and could not form the basis of a good-faith belief for filing the

DRL complaint. He supports his contention by citing the divorce proceedings in which the court held the opinions of Dr. Gardner to be "lacking in persuasiveness," "without a scientific basis," and "biased." The same court held that Dr. Underwager's opinions were "biased" and "foolish and totally ignore the facts." We agree with Dr. Ackerman that Dr. Hatfield's reliance on discredited experts may demonstrate his lack of good faith, or at the least raises a disputed issue of fact regarding good faith.

¶ 15.   The circuit court dismissed Dr. Ackerman's causes of action for abuse of process and malicious prosecution, stating that "[t]o the extent that a basis was available to Dr. Hatfield to file a complaint based upon those allegations, I believe the policy of free and open access based upon good-faith submissions in this case at least provides a presumption of good faith and is supported by some basis." The court's role in a motion for summary judgment is not to decide genuine issues of material fact or to choose between conflicting interpretations of the facts. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). The court must deny a respondent's motion for summary judgment if the plaintiff presents any evidence upon which a jury could find in the plaintiff's favor. *Id.* If disputed issues of material fact exist, or reasonable alternative inferences can be drawn from the facts, summary judgment is not appropriate. *See id.* at 338. We conclude that the record clearly demonstrates a disputed issue of material fact: whether Dr. Hatfield filed the DRL complaint in good faith. Summary judgment, therefore, was error.

¶ 16.    Statements made in the course of judicial or quasi-judicial proceedings are protected by an absolute privilege so long as the statements "bear a proper relationship to the issues." *Bergman v. Hupy*, 64 Wis. 2d 747, 750, 221 N.W.2d 898 (1974). This privilege was established to provide litigants with freedom to access the courts "to preserve and defend their rights and to protect attorneys during the course of their representation of clients." *Rady v. Lutz*, 150 Wis. 2d 643, 648, 444 N.W.2d 58 (Ct. App. 1989). Statements claiming the judicial or quasi-judicial absolute privilege must meet certain criteria. The statement "must be made in a procedural context that is recognized as affording absolute privilege, and it must be relevant to the matter under consideration." *Id.* at 647–48. Furthermore, to invoke the privilege, the statement's maker and recipient must be involved in and closely connected to the proceeding. *Id.* at 649.

¶ 17.    The relevant facts are not disputed. The September 6, 2002 letter, its contents, author, and recipients are all a matter of record. The dispositive issue, therefore, is whether the statements Dr. Hatfield made in his letter are protected by the absolute privilege. The circuit court held that, given the facts, the absolute privilege did apply. Whether the absolute privilege applies is a question of law that we review de novo. *See id.* at 647. We will reverse a decision granting summary judgment if the circuit court incorrectly decided a legal issue. *Coopman*, 179 Wis. 2d at 555.

¶ 18.    The statement in question appeared in Dr. Hatfield's September 6, 2002 letter, which was sent to

Attorney Phegley and copied to State Assembly Representative Bonnie Ladwig, Racine County Family Court Commissioner Kevin Van Kampen, and Racine County Circuit Court Judge Richard Kreul. In the letter, Dr. Hatfield stated:

> Unfortunately, your so called "expert", Marc Ackerman, Ph.D., filed an unsuccessful claim for defamation in April, 2001 . . . . Ackerman eventually dropped his claim after he knew he would lose the pending jury trial. This is a de facto admission that he did indeed commit malpractice . . . .
>
> I think its [sic] best you took your ball and went home. Just like Marc Ackerman did.

¶ 19. Dr. Hatfield argues that the letter in its entirety addresses guardian ad litem fees and was written in the procedural context of his divorce proceeding, specifically relating to postjudgment custody issues. He asserts that he only sent the letter to "a select group of individuals, all of whom were related to his ongoing divorce proceeding." Dr. Hatfield's argument fails for two reasons.

¶ 20. First, there is an insufficient connection between the allegedly defamatory statements regarding a "de facto admission that [Dr. Ackerman] did indeed commit malpractice" and the contested guardian ad litem bill. "[A] nexus between the publication and the proceeding must exist for the 'procedural context' requirement of the absolutely privileged rule to be met." *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 267, 258 N.W.2d 712 (1977). Dr. Hatfield claims that his absolute privilege attached by virtue of the divorce proceeding; however, by Dr. Hatfield's own calculation, no action on the divorce proceeding had occurred for

almost sixteen months. Moreover, the alleged defamatory statements in the September 6 letter relate to Dr. Ackerman's 2001 defamation lawsuit against Dr. Hatfield, not to the divorce proceedings. We hold that the letter was not "an integral part" of the divorce lawsuit and does not satisfy the relevancy requirement. *See id.*

¶ 21.　Second, Dr. Hatfield sent the letter to Representative Ladwig, who was not involved in the divorce proceeding. To invoke the privilege, both the sender and the recipient must be involved in and closely connected to the procedural context. *Rady*, 150 Wis. 2d at 649. We conclude that Representative Ladwig was not so connected. She had no official role in the divorce proceeding. Further, she was not involved in the defamation case that Dr. Hatfield cites in the September 6, 2002 letter.

¶ 22.　Our application of the relevant factors to the record facts clearly demonstrates that the letter sent by Dr. Hatfield lacked the required nexus between the judicial proceeding and the statements made. Further, the circulation of the letter outside that circle of individuals who might arguably be connected to the judicial proceeding takes the letter beyond the boundaries of absolute privilege. Defamatory statements that are plainly irrelevant, impertinent and voluntarily made are not privileged. *Id.* For these reasons, summary judgment based on absolute privilege was error.

## CONCLUSION

¶ 23.　Summary judgment is a drastic remedy. We conclude it was inappropriately granted on all causes of action put forth by Dr. Ackerman. The circuit court improperly decided issues of material fact with regard to Dr. Hatfield's defense of statutory immunity under Wis. Stat. § 440.042(2). Upon Dr. Ackerman's presenta-

tion of evidence refuting Dr. Hatfield's good-faith DRL filing, the court's duty was to deny summary judgment rather than to decide the issue without the benefit of a trial. *See Grams*, 97 Wis. 2d at 338. We further conclude that the circuit court erred when it improperly applied the legal rule of absolute privilege to Dr. Hatfield's September 6, 2002 letter. The judgment is reversed, and the matter is remanded for trial.

*By the Court.*—Judgment reversed and cause remanded.