COURT OF APPEALS
DECISION
DATED AND FILED

April 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP772**

Cir. Ct. No. **2018CV2142**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

SCOLL & REMEIKA, LLC,

   PLAINTIFF-APPELLANT,

 V.

VICTORIA FUEGER AND AMERICAN FAMILY MUTUAL INSURANCE CO.,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Reversed and cause remanded with directions*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This action, filed in the Dane County Circuit Court, concerns allegedly defamatory statements made by Victoria Fueger

regarding a business, Scoll & Remeika, LLC ("Scoll"). Fueger sent those communications to Scoll's clients, potential sources of referrals for Scoll, various law enforcement and regulatory agencies, the Better Business Bureau, and a television reporter. Fueger moved for summary judgment requesting dismissal of Scoll's claims. The circuit court granted Fueger's motion based on the conclusions that each of Fueger's communications was either: not capable of having a defamatory meaning; or privileged and Fueger's statements did not lose the protection of any privilege by abusing it. Scoll appeals.

¶2 We agree with Scoll that the circuit court erred because there are genuine issues of material fact regarding: whether Fueger's communications are capable of being understood as having a defamatory meaning; whether there are privileges applicable to many of the communications at issue; and whether Fueger has abused, and therefore forfeited, the privileges that she asserts. Therefore, we reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3 There is no genuine issue regarding the following material facts.

¶4 Scoll refers to itself as a "probate research firm" that serves clients in Wisconsin. Its owner and principal during relevant periods was Diane Remeika.

¶5 Pertinent to this appeal, as one aspect of its business, Scoll researches probate matters it has learned about through public records or through attorney referrals. During that process, Scoll tries to locate heirs of estates. After Scoll locates and contacts a potential heir, the heir sometimes enters into a contract

offered by Scoll under which Scoll prepares and presents the heir's proof of claim to the estate. This service may include retaining an attorney at Scoll's expense to represent the heir in the probate proceedings and facilitate the distribution of the estate's assets to the heir.

¶6 Typically, Scoll sends each potential heir a letter disclosing the name of the estate and informing the heir that he or she may have a claim of inheritance. With that letter, Scoll encloses a proposed contract for the heir to sign, along with a cover letter and a brochure outlining the services offered by Scoll. Under the terms of the proposed contract, Scoll is compensated for its services on a contingency-fee basis, and typically charges about 25% of the amount recovered from the estate by the heir.

¶7 In 2017, Scoll began researching the Estate of Thomas J. Barry, Jr., then pending in the Dane County Circuit Court (the "Barry Estate").[1] Scoll identified all nineteen heirs of the Barry Estate (hereinafter, the "heirs"), including Fueger. Scoll contacted sixteen of the heirs, including Fueger. Scoll provided information to each heir about his or her potential inheritance in correspondence that included the name of the estate. Scoll offered each a contract for services similar to that already described. Fifteen of the sixteen heirs who were contacted, including Fueger, signed the contracts offered by Scoll.

---

[1] The parties refer to Barry Estate pleadings and orders that are not in the record in this appeal. The parties apparently assume that this court has the same electronic access to circuit court documents, including documents filed in the Barry Estate, that circuit courts have. We do not. However, the parties' failure to have placed in the record in this appeal documents from the Barry Estate that are mentioned in briefing in this court is not material because the parties do not dispute the substance of the pertinent Barry Estate pleadings and orders.

¶8     Fueger also signed an Attorney Authorization and Limited Power of Attorney, provided by Scoll, authorizing an attorney recommended by Scoll to Fueger to represent her in the Barry Estate proceeding.  Proof of heirship of all of the heirs was filed with the probate court in November 2017 by that attorney.

¶9     Fueger was a first cousin once-removed of Mr. Barry.  Fueger was entitled to 00.535725% of the Barry Estate.

¶10    After signing the contract with Scoll, Fueger learned that the Barry Estate was worth about $3.5 Million.  According to the amounts and percentages already mentioned, her gross share of that estate was approximately $18,750.00, and the 25% fee owed to Scoll under the contract would be about $4,700.00.  In June 2018, Fueger emailed Scoll and stated that she was "not comfortable paying more that 10%" of her inheritance to Scoll.  A few days later, Fueger sent another email to Scoll stating that she did not want to pay any amount to Scoll out of her inheritance, and also stating that "[t]his will be a legal matter I will be pursuing.  I will do everything in my power to insure [sic] everyone is protected and this will never happen again at the minimum in our State of Wisconsin."

¶11    Fueger then emailed some heirs who had entered into contracts with Scoll.  She encouraged each to join in a motion in the Barry Estate to void Scoll's contracts with them.  Fueger's statements in that email included:

- "We must act now!!"; and

- "Let's nail these guys to the wall!!!"

Fueger also urged one of the heirs to "[p]lease share this" email with additional heirs.

4

¶12    Nine of the heirs, including Fueger, retained an attorney to litigate against Scoll in the Barry Estate. They filed a petition in the Barry Estate in July 2018 seeking to void Scoll's contracts with some of the heirs.

¶13    That petition in the Barry Estate was denied on summary judgment, and Scoll's contracts were not voided. Distributions to all heirs were then completed, both to those who entered into the contracts with Scoll and those who did not, and the Barry Estate was closed in June 2020.

¶14    Fueger sent communications that Scoll alleges are defamatory. The specifics of those communications will be discussed later in this opinion.

¶15    Scoll filed this lawsuit against Fueger. The operative complaint contains two claims. The first is a claim for defamation, and the second claim is for tortious interference with contracts. Fueger moved for summary judgment on both claims in the circuit court, arguing as to the defamation claim that none of her allegedly defamatory communications were actionable. Scoll opposed the motion, but did not itself move for partial or full summary judgment.

¶16    The circuit court denied Fueger's motion with respect to the tortious interference with contracts claim and granted the motion with respect to the defamation claim.[2]

---

[2] In light of its decision regarding the defamation claim, the circuit court did not rule on a motion from defendant American Family Insurance requesting a declaratory judgment on whether it has a duty to defend or indemnify Fueger in this action.

¶17    Scoll voluntarily dismissed the tortious interference with contracts claim and filed this appeal.  We set forth other material facts in the following discussion.

## DISCUSSION

¶18    Scoll argues that the circuit court erred in granting summary judgment to Fueger because there are genuine issues of material fact which require a jury trial to resolve.  We agree for the reasons we now summarize.

¶19    The elements of a common law action for defamation are:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her.

*Ladd v. Uecker*, 2010 WI App 28, ¶8, 323 Wis. 2d 798, 780 N.W.2d 216.[3]  In the framework of Fueger's summary judgment motion, we must determine three issues.  The first issue is whether there is a genuine issue of material fact that Fueger's communications about Scoll could be capable of being understood in a defamatory sense, in which case it is for a jury to find the facts necessary to resolve whether each statement at issue has a defamatory meaning.  We conclude that there are genuine issues of material fact precluding summary judgment in favor of Fueger on the issue of defamatory meaning.

¶20    The second issue concerns the defamation doctrine that, under certain circumstances, an allegedly defamatory statement is not actionable because

---

[3] Whether any statement is true is a defense that we discuss later in this opinion.

it is deemed "privileged." *See Otten v. Schutt*, 15 Wis. 2d 497, 504, 113 N.W.2d 152 (1962) (defendant in defamation action has burden to show that allegedly defamatory statement is protected by a privilege). We explain below why the need for fact-finding regarding the alleged existence of privileges for several statements at issue here precludes summary judgment.

¶21 The third issue concerns the defamation doctrine that statements can lose protection based on a privilege if the defendant abuses the privilege. *See Denny v. Mertz*, 106 Wis. 2d 636, 663, 318 N.W.2d 141 (1982) (a defendant is liable for a defamatory statement if an asserted privilege has been abused by the defendant because the privilege is forfeited as a result of the abuse). We explain below that there are genuine issues of material fact concerning Fueger's purported abuse of privileges which would result in her forfeiture of the protection of any privileges that could apply.

¶22 We begin by considering our standards of review, summary judgment methodology, and governing principles.

## I.  Standards of Review, Summary Judgment Methodology, and Governing Principles.

¶23 We review the grant or denial of summary judgment de novo, applying the same standards as the circuit court does. *Ackerman v. Hatfield*, 2004 WI App 236, ¶9, 277 Wis. 2d 858, 691 N.W.2d 396.

¶24 A party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. WIS. STAT.

§ 802.08(2) (2019-20).[4]  The initial step in summary judgment methodology is to analyze the complaint to determine whether it states a claim.  *Hart v. Bennet*, 2003 WI App 231, ¶12, 267 Wis. 2d 919, 672 N.W.2d 306.  The parties do not address this step, and Fueger implicitly acknowledges that Scoll's operative complaint states a cause of action for defamation.  In circumstances such as this in which the defendant (here, Fueger) is moving for summary judgment, the second step in summary judgment methodology requires a court to examine the defendant's submissions to determine whether those establish a prima facie defense to the claim.  *Id.*; *Erdmann v. SF Broad. of Green Bay, Inc.*, 229 Wis. 2d 156, 163, 599 N.W.2d 1 (Ct. App. 1999) ("To make a prima facie case for summary judgment, [the] moving defendant [in a defamation action] must establish a defense that would defeat [the plaintiff's] claim as a matter of law.").  If the second step is satisfied by the defendant, in the third step in summary judgment methodology a court determines whether the submissions of the plaintiff (here, Scoll) create a genuine issue of material fact requiring a trial.  *Hart*, 267 Wis. 2d 919, ¶9.

¶25    On summary judgment, a court does not decide genuine issues of material fact or choose between conflicting interpretations of the facts. *Ackerman*, 277 Wis. 2d 858, ¶15.  If disputed issues of material fact exist, or reasonable alternative inferences can be drawn from the facts, then summary judgment must not be granted.  *Id.*  A court views the record in the light most favorable to the party opposing the summary judgment motion.  *Biskupic v. Cicero*, 2008 WI App 117, ¶12, 313 Wis. 2d 225, 756 N.W.2d 649.  "Any

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

reasonable doubt as to the existence of a factual issue must be resolved against the party moving for summary judgment." *Ackerman*, 277 Wis. 2d 858, ¶9.

¶26 In this particular context, this court has stated: "In matters concerning the law of defamation," "we must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence." *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶13, 351 Wis. 2d 479, 840 N.W.2d 255 (quoted source omitted).

¶27 Whether a communication is capable of having a defamatory meaning is a matter of law for a court to determine, and our review of this issue is de novo. *Laughland v. Beckett*, 2015 WI App 70, ¶21, 365 Wis. 2d 148, 870 N.W.2d 466; *Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 482-84, 309 N.W.2d 125 (Ct. App. 1981). If a court rules that "the statements complained of are capable of a nondefamatory meaning as well as a defamatory meaning, then a jury question is presented." *Converters Equip. Corp. v. Condes Corp.*, 80 Wis. 2d 257, 262-63, 258 N.W.2d 712 (1977).

¶28 Whether a conditional privilege, such as those privileges asserted by Fueger in this case, "attaches to a particular occasion is a question of law" that this court reviews de novo. *Olson v. 3M Co.*, 188 Wis. 2d 25, 45, 523 N.W.2d 578 (Ct. App. 1994) (citing RESTATEMENT (SECOND) OF TORTS § 619(1) cmt. a (1977)).

¶29 Turning to Scoll's argument that Fueger does not have the protection of privileges because she abused those, "[t]he abuse of a conditional privilege is for the fact finder to decide if there are disputed facts or competing reasonable inferences to be drawn from undisputed facts. But where 'the facts are such that only one conclusion can reasonably be drawn,' the court properly makes this

determination." *Id.* at 46 (quoting RESTATEMENT (SECOND) OF TORTS § 619(2) cmt. b (1977)). Our review of this issue is also de novo. *See id.*

## II. Is Each Fueger Communication Capable of Having a Defamatory Meaning?

¶30 As noted, the first inquiry in evaluating a defamation claim is for the court to determine whether the communication is capable of having a defamatory meaning. *Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 462, 113 N.W.2d 135 (1962); *Laughland*, 365 Wis. 2d 148, ¶21. "A communication is defamatory if it tends to harm the reputation of another so as to lower him [or her] in the estimation of the community or deter third persons from associating or dealing with him [or her]." *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 921, 440 N.W.2d 548 (1989). "A statement is also defamatory if, in its natural and ordinary sense, it imputes to the person the charged commission of a criminal act." *Converters Equip.*, 80 Wis. 2d at 263.

¶31 In determining whether a communication may be defamatory, the words "must be construed in the plain and popular sense in which they would naturally be understood." *Terry*, 351 Wis. 2d 479, ¶19. In other words, a court considers whether the communication is "reasonably capable of conveying a defamatory meaning to the ordinary mind." *Laughland*, 365 Wis. 2d 148, ¶21. "The context and circumstances" in which the communication was made must also be considered. *Terry*, 351 Wis. 2d 479, ¶19; *see also* WIS JI—CIVIL 2501 ("In determining whether (defendant) made or published a defamatory statement, you should consider the whole context of the communication, giving the particular words of defamation their natural and ordinary meaning."); *Westby v. Madison Newspapers, Inc.*, 81 Wis. 2d 1, 6, 259 N.W.2d 691 (1977) ("The issue before this

10

court then is whether [the communication] was capable of being understood in a defamatory sense in the community by reasonable persons. In resolving this issue, words or elements of the article may not be viewed in isolation, but must be considered in context in relation to the whole.").

¶32 Germane to this appeal, communications which allege that an individual or a business has engaged in "dishonorable, unethical or unprofessional conduct in a trade, business or profession are capable of a defamatory meaning." *Fields*, 103 Wis. 2d at 483 (citing *Converters Equip.*, 80 Wis. 2d at 263); *see also Wozniak v. Local 1111 of United Elec., Radio & Mach. Workers of Am.*, 57 Wis. 2d 725, 205 N.W.2d 369 (1973) (worker accused of being a "scab"); *Ranous v. Hughes*, 30 Wis. 2d 452, 141 N.W.2d 251 (1966) (teacher accused of making a personal attack on a student in a classroom); *Walters v. Sentinel Co.*, 168 Wis. 196, 169 N.W. 564 (1918) (doctor called a "quack").

¶33 Liability can arise from a communication that defames only through what it implies. *Terry*, 351 Wis. 2d 479, ¶14. As our supreme court has held: "One may be libeled by implication and innuendo quite as easily as by direct affirmation." *Converters Equip.*, 80 Wis. 2d at 264 (quoting *Frinzi v. Hanson*, 30 Wis. 2d 271, 277, 140 N.W.2d 259 (1966)).

¶34 As noted earlier, an element of defamation is a communication to a person other than the person or business that was allegedly defamed. *Ladd*, 323 Wis. 2d 798, ¶8. Fueger does not dispute that she has communicated about Scoll and its principal, Remeika, to the heirs, persons Scoll refers to as "potential referral sources," the Better Business Bureau, and the following law enforcement or regulatory agencies: Waunakee Police Department, United States Department of Justice, Wisconsin Department of Agriculture, Trade, and Consumer Protection

("DATCP"), and the Wisconsin Office of Lawyer Regulation ("OLR").[5] Fueger also communicated with a local television station reporter about Scoll and Remeika.

¶35 According to Scoll, Fueger's defamatory statements are the following. Fueger does not dispute that she made the following statements to the persons or offices noted.

¶36 In emails to the heirs, Fueger stated that Scoll "pray[s] [sic] on innocent and vulnerable people" and "acted unethically." In the same emails, Fueger stated that Scoll's conduct in regard to the Barry Estate was "treachery," an "evil tactic," and "unethical and down[]right disgusting." Fueger further stated: "Our main point, is that [Scoll] acted unethically. We believe there are laws in place to protect us." Scoll contends that the latter statement clearly implies illegal conduct on the part of Scoll.

¶37 In emails to persons Scoll refers to as "potential referral sources" for its business, Fueger stated that Scoll's business is a "racket" and she is "shocked this sort of thing can go on." In one of those same emails, Fueger asked for "help [to] put an end to some of the unscrupulous activity of some people in this industry …" and referred to the heir-finding business Scoll is in as "unscrupulous."

¶38 Fueger filed a complaint with the Better Business Bureau, with which Scoll had an A+ rating. In the complaint, Fueger stated that Scoll is "a

---

[5] Fueger does not dispute that, if it is determined that she made unprivileged defamatory statements about Remeika in Remeika's professional capacity as Scoll's principal, those statements are actionable in the defamation claim brought by Scoll.

scam," that Fueger "was scammed" by Scoll, and that Scoll "use[s] all the psychological tactics to get you to sign a contract."

¶39 According to Scoll, Fueger implied that Scoll is engaged in criminal wrongdoing when she stated in email communications to a local television news reporter that "these [heir-finding] companies," including Scoll, are "being looked at by the Department of Justice."[6]

¶40 In communications with OLR, which investigates allegations of attorney malfeasance or misconduct, and the Waunakee Police Department, Fueger stated that Remeika had committed "attorney misconduct" through "practicing law without a license" and "barratry" although Remeika is not a licensed attorney. In those same communications, Fueger stated that Remeika committed "crimes" including barratry, and the unauthorized practice of law.[7]

¶41 In addition, in a letter to OLR, in Scoll's view, Fueger implied that Scoll violated rules of professional ethics, and engaged in criminal behavior,

---

[6] In an on-air news segment for WISC-TV3/Channel3000.com in which Scoll's business was named, Fueger stated that Scoll's business practice "is not good…. I'm like, this isn't, this isn't right." (https://www.youtube.com/watch?v=x2aNN2Svowg, last visited March 28, 2022). That is the only statement from Fueger made in the news segment that Scoll alleges is defamatory. We conclude that, in the context of the news segment, Fueger's one statement focused on by Scoll cannot be understood as defamatory as a matter of law. Most of the news segment consists of statements by a reporter and a third-party interviewed by the reporter that cannot be attributed to Fueger.

Separately, we note that a video or transcript of this news segment is not in the record. Instead, Scoll's briefing in this court refers to an URL that leads to a video on the YouTube website. Because of the sometimes transitory nature of such videos on the internet, we direct counsel to, in the future, place a copy of the video in the record rather than directing this court to search for evidence on the internet.

[7] WISCONSIN STAT. §§ 757.295 (barratry) and 757.30 (practicing law without a license) establish that barratry and the unauthorized practice of law are defined as conduct that can be charged as unclassified misdemeanor crimes under Wisconsin law.

writing that "at one time maybe Scoll … operated within the confines of those forensic genealogist[s] who follow a set of ethics … until [Remeika] came across Kemp & Associates …." Regarding this last reference, Fueger does not dispute that Kemp & Associates was a probate research firm that was convicted, along with its principal, of criminal antitrust violations, and was fined over $1.5 million. Fueger has also stated to OLR that Remeika "intentionally withheld information concerning the size of the Barry Estate" from the heirs and "manipulated heirs into retaining [Scoll's] services."

¶42    In a complaint to DATCP, Fueger stated that Scoll and Remeika are "leaches [sic] … who pray [sic] on innocent people" and that Scoll "fooled" her. The complaint further stated that Scoll "did not disclose all the information on what [Scoll was] collecting," Scoll "eluded [sic] to [the amount of the Barry Estate] being … a small amount," and Scoll was "very mis[]leading" in communications to Fueger.

¶43    For convenience, we refer to each of Fueger's statements just discussed (with the exception of Fueger's statement that was aired in the television news segment mentioned in note 6, *supra*) as the "allegedly defamatory statements." Fueger argues that none of the allegedly defamatory statements can be understood in a defamatory sense for four reasons, but we reject each of her arguments.

¶44    First, Fueger contends, in a merely generalized conclusory fashion and without any discussion of the allegedly defamatory statements, that none of her statements is capable of having a defamatory meaning. Construing the communications "in the plain and popular sense in which they would naturally be understood," in proper context, we conclude that Fueger's allegedly defamatory

14

statements regarding Scoll could reasonably be interpreted by a jury as tending to harm the reputation of that business so as to lower that business in the estimation of the community and deter persons from dealing with Scoll. *See Zinda*, 149 Wis. 2d at 921; *Westby*, 81 Wis. 2d at 6; *Terry*, 351 Wis. 2d 479, ¶19; *Fields*, 103 Wis. 2d at 483. Some of the allegedly defamatory statements at least implied that Remeika, Scoll's principal, had committed one or more crimes. The language used in those statements cannot be reconciled with Fueger's position because a jury could reasonably determine that Fueger's allegedly defamatory statements are, in fact, defamatory.

¶45 Second, Fueger asserts that her "opinions cannot be proven false." "By definition, a defamatory statement must be false." *Anderson v. Hebert*, 2011 WI App 56, ¶14, 332 Wis. 2d 432, 798 N.W.2d 275. Therefore, the truth of a communication is an absolute defense to a defamation claim. *Id.* Further, the communication need not "be true in every particular. All that is required is that the statement be substantially true." *Id.* It is Fueger's burden in these circumstances to establish that her statements were substantially true. *See, e.g.*, *Laughland*, 365 Wis. 2d 148, ¶¶23, 26. But, other than making that wholly conclusory assertion, Fueger does not explain how evidence in the record establishes the truth of any of her allegedly defamatory statements, which Scoll alleged in its complaint and argues on appeal are false. Accordingly, we reject this argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d

633 (Ct. App. 1992) (explaining that we need not consider inadequately developed arguments).[8]

¶46   Third, Fueger contends that some of her statements cannot be understood as having a defamatory meaning because "[o]pinions cannot be defamatory." More specifically, Fueger argues that her complaint to the Better Business Bureau contained only opinions when she stated that Scoll is a "scam," Fueger "was scammed" by Scoll, and Scoll "use[s] all the psychological tactics to get you to sign a contract." Fueger asserts that these are only opinions because each was qualified by her stating these things were true "in her opinion." Similarly, Fueger contends that "any statements [Fueger made to others] that Scoll was 'unethical,' running a 'racket,' or 'unscrupulous,' or that Scoll intentionally withheld information regarding the size of the Barry Estate are only opinions that Fueger expressed."

¶47   We disagree with Fueger, including her blanket assertion that opinions cannot be defamatory. An allegedly defamatory statement *may* not be actionable because it is an opinion, but "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs." *Laughland*, 365 Wis. 2d 148, ¶27; *see also* *Converters Equip.*, 80 Wis. 2d at 264 ("It is true that the letters contained words such as 'apparently' and 'appear to be.' This changes nothing. The authorities agree that

---

[8] In a similar vein, we are unsure whether Fueger intends to argue that her statements to OLR and the Waunakee Police Department about alleged "attorney misconduct" are true when she contends in briefing in this court that those statements were "based in fact" because she "relied" on the advice of an attorney. If that is Fueger's intent, we reject her argument because she does not explain it. Further, Fueger gives no record citation to summary judgment evidence that could support the factual assertion, whatever its potential legal significance, that she "relied" on an attorney's advice in making those statements.

communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs."). The strong language used by Fueger, as just quoted, does not become incapable of a defamatory meaning merely because Fueger has a basis to argue that some of her allegedly defamatory statements were merely expressions of opinion. Depending on the relevant evidence adduced at trial, Fueger might have viable arguments to present to the jury that some of the statements at issue were not defamatory because those statements should have been understood to be expressions of opinion. But summary judgment is not appropriate based on her argument that her qualifications compel the conclusion that the statements were not defamatory.

¶48 Fourth, Fueger argues that some of her allegedly defamatory statements cannot be construed as concerning Scoll because those statements can only reasonably be interpreted as referring to the heir-finding industry as a whole. A jury could reasonably construe some of Fueger's allegedly defamatory statements as referring to this industry as a whole. But, looking at the statements in context, a jury also could draw reasonable inferences that Fueger was referring to Scoll in those statements, whether or not the statements also implicated others in the same industry to a greater or lesser degree. "Any reasonable doubt as to the existence of a factual issue must be resolved against the party moving for summary judgment." *Ackerman*, 277 Wis. 2d 858, ¶9; *see Condit v. Dunne*, 317 F. Supp. 2d 344, 359 (S.D.N.Y. 2004) ("[W]hether defendant's statements are about plaintiff ordinarily presents a factual issue.").

¶49 To repeat, our supreme court instructs that, "[i]f the statements are capable of a nondefamatory as well as a defamatory meaning, then a jury question is presented." *Zinda*, 149 Wis. 2d at 921. Here, there are jury questions regarding

whether Fueger's allegedly defamatory statements can be understood to have a defamatory meaning.

### III.  Are Any of the Allegedly Defamatory Statements Conditionally Privileged?

¶50  Fueger argues that, even if the allegedly defamatory statements are defamatory, she cannot be liable because several of the statements are protected by one of two privileges, and therefore summary judgment must be granted in her favor.  The burden is on Fueger to prove that any allegedly defamatory statement is protected by a privilege.  *See Otten*, 15 Wis. 2d at 504.

¶51  One of the two privileges that Fueger claims, for some of the statements, is called the "public interest" privilege.  Under this privilege, defamatory statements are privileged "based on 'the public policy that certain conduct which would otherwise be actionable may escape liability because the defendant is acting in furtherance of some interest of societal importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff.'"  *Hart*, 267 Wis. 2d 919, ¶29 (quoting *Zinda*, 149 Wis. 2d at 921-22).  Regarding the public interest privilege, our supreme court has stated:

> In [the RESTATEMENT OF TORTS], it is stated that an occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that (a) facts exist which affect a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true.

*Otten*, 15 Wis. 2d at 500.[9]

¶52     The other privilege that Fueger claims is called the "common interest" privilege.  Under the common interest privilege, a defamatory statement is privileged if it is made "on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest." ***Posyniak v. School Sisters of St. Francis of St. Joseph's Convent***, 180 Wis. 2d 619, 628, 511 N.W.2d 300 (Ct. App. 1993); *see also* ***Zinda***, 149 Wis. 2d at 922.  Our supreme court has explained the basis for the common interest privilege:

> Section 596 of the RESTATEMENT 2D OF TORTS defines the "common interest" privilege:
>
> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.
>
> The common interest privilege is based on the policy that one is entitled to learn from his [or her] associates what is being done in a matter in which he or she has an interest in common.  Thus, defamatory statements are privileged which are made in furtherance of common … business, or professional interests.

***Zinda***, 149 Wis. 2d at 922-23.

¶53     Fueger asserts that the public interest privilege attaches to her allegedly defamatory statements to regulatory agencies, law enforcement, and the Better Business Bureau.  She asserts that the common interest privilege attaches to

---

[9] "In the area of conditional privilege, [Wisconsin courts] look to RESTATEMENT (SECOND) OF TORTS." ***Hart v. Bennet***, 2003 WI App 231, ¶29, 267 Wis. 2d 919, 672 N.W.2d 306.

her allegedly defamatory statements made to the heirs. Fueger makes no discernible argument on appeal that her allegedly defamatory statements to Scoll's potential referral sources or to the news reporter that preceded the news segment are privileged. Fueger asserts that there are no genuine issues of material fact regarding whether the privileges asserted by her apply to her allegedly defamatory statements. For the following reasons, we disagree.

¶54    To make a prima facie defense to a defamation claim, Fueger, as the moving defendant on summary judgment, must establish a defense that will defeat Scoll's claim as a matter of law. *Hart*, 267 Wis. 2d 919, ¶12; *Erdmann*, 229 Wis. 2d 156, 163. The parties agree that both of the privileges asserted by Fueger are "conditional" rather than "absolute." *See Vultaggio v. Yasko*, 215 Wis. 2d 326, ¶17, 572 N.W.2d 450 (1998). A conditional privilege applies only in situations in which "persons making the statements have reasonable grounds for believing the truth of the statements made" and "the statements made are reasonably calculated to accomplish the privileged purpose." *Converters Equip.*, 80 Wis. 2d at 265.[10] Accordingly, to have a conditional privilege apply, one requirement is that Fueger establish that she had reasonable beliefs about her allegedly defamatory statements.

¶55    Here, Fueger asserts that some of her allegedly defamatory statements are privileged because she had "reasonable belie[fs]" about the truth of

---

[10] Similarly, as already noted, the public interest privilege states that otherwise defamatory statements are privileged if the defendant has a "reasonable belief that … facts exist which affect a sufficiently important public interest," *Otten v. Schutt*, 15 Wis. 2d 497, 500, 113 N.W.2d 152 (1962), and the common interest privilege requires that the defendant "reasonably … believe[s] that there is information that another sharing the common interest is entitled to know," *Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 922, 440 N.W.2d 548 (1989).

her allegedly defamatory statements. As examples, she argues that she had reasonable beliefs that: Scoll "was engaging in unfair and misleading business practices"; Remeika was "engaged in the unauthorized practice of law," and other acts of Remeika were "unethical"; as asserted to DATCP by Fueger, both Scoll and Remeika are "leaches [sic] … who pray [sic] on innocent people," Scoll "fooled" her, Scoll "did not disclose all the information on what [Scoll was] collecting," and Scoll was "very mis-leading" in communications to Fueger; and Fueger had a "well-established position" that she asserted to the Better Business Bureau that Scoll's business is a "scam," Fueger "was scammed" by Scoll, and that Scoll "use[s] all the psychological tactics to get you to sign a contract." In response, Scoll argues that Fueger's beliefs just described are not reasonable because, among other reasons, Fueger had no viable basis for her allegedly defamatory statements.

¶56     As discussed earlier, a court must view the record in the light most favorable to the party opposing the summary judgment motion. *Biskupic*, 313 Wis. 2d 225, ¶12. Also, "[i]n matters concerning the law of defamation," "we must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence." *Terry*, 351 Wis. 2d 479, ¶13 (quoted source omitted).[11] Here, consistent with our discussion above regarding Fueger's argument that her statements "cannot be

---

[11] We recognize that whether a conditional privilege "attaches to a particular occasion is a question of law" determined by a court. *See Olson v. 3M Co.*, 188 Wis. 2d 25, 45, 523 N.W.2d 578 (Ct. App. 1994) (citing RESTATEMENT (SECOND) OF TORTS § 619(1) cmt. a (1977)). However, the circuit court does not resolve disputed facts regarding whether any allegedly defamatory statements are privileged. *See, e.g.*, WIS JI—CIVIL 2507, cmt. ("If the facts are in dispute, the jury determines the issues of fact, and the court decides whether the facts found by the jury make the publication privileged.").

proven false," Fueger provides us with nothing more than conclusions, unsupported by the record, that she had reasonable grounds to believe her allegedly defamatory statements. In sum, Fueger may (or may not) prove at trial that there is a factual basis for one or both of the two privileges to apply to one or more of her allegedly defamatory statements. But she has not established that assertion based on the current record. Therefore, the issue of whether or not privileges could protect any such statement cannot be resolved on summary judgment.

### IV.  Alleged Abuse of Either Asserted Conditional Privilege.

¶57     A defendant is liable for a defamatory statement if a privilege asserted by the defendant has been abused by the defendant because the privilege is forfeited as a result of the abuse. *Denny v. Mertz*, 106 Wis. 2d 636, 663, 318 N.W.2d 141 (1982). It is a plaintiff's burden to establish abuse of a privilege in a defamation action. *See Olson*, 188 Wis. 2d at 38 (citing *Zinda*, 149 Wis. 2d at 926).

¶58     "The question whether a conditional privilege has been abused is a factual question for the jury, unless the facts are such that only one conclusion can be reasonably drawn." *Zinda*, 149 Wis. 2d at 926 (citing RESTATEMENT (SECOND) OF TORTS § 619(2) cmt. b (1977)). In other words, summary judgment cannot be granted regarding whether a conditional privilege has been abused if "[t]here are reasonable inferences from the evidence that, if believed by a jury, would defeat this defense" or "a reasonable fact finder could decide" that a privilege was abused. *Hart*, 267 Wis. 2d 919, ¶31. Scoll argues that whether Fueger abused (and therefore forfeited) each asserted privilege is a jury issue

because, based on reasonable inferences from evidence in the record, a jury could decide that both privileges have been abused by Fueger. We agree.

¶59 Our supreme court has set forth conditions constituting abuse of a privilege in defamation actions:

> The Restatement lists five conditions which may constitute an abuse of the privilege …. The privilege may be abused, (1) because of the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (*see* §§ 600-602); (2) because the defamatory matter is published for some purpose other than that for which the particular privilege is given (*see* § 603); (3) because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (*see* § 604); (4) because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (*see* § 605); or (5) the publication includes unprivileged matter as well as privileged matter (*see* § 605A).

*Vultaggio*, 215 Wis. 2d 326, ¶9 (internal citation omitted). Scoll argues that conditions (1) and (2), just quoted, apply in these circumstances regarding both asserted privileges. The "occurrence" of any one of those five "conditions" "causes the loss of the privilege." *Id.* With that background, we now turn to the arguments of the parties.

¶60 We first discuss condition (2). Specifically, Scoll contends that Fueger abused both the asserted common interest and public interest privileges because the allegedly defamatory statements were "published for some purpose other than that for which the particular privilege is given." *See id.* (quoting RESTATEMENT (SECOND) OF TORTS § 603 (1977)). Scoll contends that Fueger did so in two separate ways: by exhibiting "ill will" toward Scoll, which abused both

23

asserted privileges; and by publishing some of the allegedly defamatory statements to regulatory agencies "excessively," which abused the public interest privilege.

## A. Ill Will.

¶61    Concerning Scoll's assertion of ill will by Fueger, our supreme court has stated:

> With respect to [§ 603] the RESTATEMENT comments as follows:
>
> "Thus, a publication of defamatory matter upon a privileged occasion if made solely from spite or ill will is an abuse and not a use of the occasion. However, if the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the occasion."

*Ranous*, 30 Wis. 2d at 468-69, 141 N.W.2d 251 (1966); *see also Calero v. Del Chem. Corp.*, 68 Wis. 2d 487, 507, 228 N.W.2d 737 (1975); RESTATEMENT (SECOND) OF TORTS § 603, cmt. a (1977). Case law has further defined this condition as "ill-will, envy, spite, revenge, or any other bad or corrupt motive[s]." *Calero*, 68 Wis. 2d at 507.

¶62    Fueger contends that there is insufficient evidence that she exhibited "ill will" toward Scoll. Fueger asserts that there is a reasonable inference from the evidence that she believed that she had been misled by Scoll and that Scoll "acted unethically and engaged in deception." Relying on *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), Fueger states that her allegedly defamatory statements to the heirs were nothing more than "vigorous epithets" or a "lusty and imaginative expression of contempt." Further, Fueger asserts that the evidence could support a finding that her decision to communicate with regulatory agencies and the Better

Business Bureau was at all times "measured and reasonable." Fueger argues that the reasonable inference from the evidence is that she made the allegedly defamatory statements to the regulatory agencies and the Better Business Bureau "to protect the public" and "enact regulation of the heir-finding industry" "of which Scoll is a member," and that the evidence supports the reasonable inference that she did so because she believed that Scoll's business is "deceptive and does not live up to the standards by which [she] lives."

¶63    Pertinent to our analysis, evidence regarding the behavior of a defendant can support a finding of abuse of a privilege, ill will, and malice in a defamation action. *Anderson*, 332 Wis. 2d 432, ¶25 ("A jury could also find actual malice based on Hebert's behavior."); *Hart*, 267 Wis. 2d 919, ¶31. As argued by Scoll, "there is no doubt about Fueger's malicious proclivities directed at those with whom she disagrees on matters connected to her disputes with Scoll – including Scoll itself." Scoll refers to these as "contextual and behavioral evidence of Fueger's malicious motivations." Some examples are now discussed.

¶64    Scoll asserts that Fueger's following statements to the attorney who represented the heirs in the motion made in the Barry Estate to void the Scoll contracts demonstrate her motivation to "hurt" Scoll:

> I heard some mention of a Gag order if we lose [the Petition in the Barry Estate proceedings to void the Scoll contracts]. I'm not up for that. I would rather take $1000 create a website about what happened and go out on social media to educate people. If there is a chance we can lose, that tactic would hurt [Scoll] more and offer me more 'bang for my buck.'

(Emphasis omitted.) After Fueger fired that attorney, Fueger wrote to the attorney again about Scoll, stating, "I would be better served to take these people down in my own way." (Emphasis omitted.)

¶65     Scoll also argues that Fueger became "fixated" on Remeika, Scoll's principal.  As one example, Fueger took pictures of Remeika in a restaurant from outside the restaurant.

¶66     As noted earlier, Fueger emailed Scoll's clients, including the heirs. She encouraged each to join in a challenge to void Scoll's contracts with the heirs. Fueger's statements in that email included:

- "We must act now!!"; and

- "Let's nail these guys to the wall!!!"

¶67     Fueger's position is that the evidence reflects that, in communicating about Scoll, she has acted as a reasonable person would, reaching out to others with reasonable, measured language.  The evidence just discussed arguably rebuts Fueger's position.  As already noted, whether a privilege has been abused is not a jury issue only if just one conclusion can reasonably be drawn from the evidence and reasonable inferences.  Here, a jury may reasonably determine that Fueger made the allegedly defamatory statements "solely from spite or ill will."  *See Ranous*, 30 Wis. 2d at 469.

## B.  Published Excessively.

¶68     Scoll also argues that Fueger made statements to the Waunakee Police Department and OLR "excessively" and those statements were therefore published for a purpose other than that for which a particular privilege was given. Our supreme court has recognized that a conditional privilege can be abused if a statement that might otherwise be privileged is published beyond that needed for purposes of the privilege; that is, the statement is published "excessively" and that

abuses the privilege. *See Zinda*, 149 Wis. 2d at 921-26; RESTATEMENT (SECOND) OF TORTS § 603 (1977).

¶69 Scoll contends that, after OLR told Fueger that it had no jurisdiction over her complaints and the Waunakee Police Department told her that there was no crime and no investigation of Remeika or Scoll warranted, Fueger continued to contact those agencies asserting that Remeika had committed the crime of unauthorized practice of law.

¶70 In response, Fueger states that her approach of continually contacting the Waunakee Police Department and OLR was "tenacious, but not excessive." In addition, Fueger contends that she did not "belabor any of those [agency contacts]" and therefore "her approach" was not "excessive." Fueger further contends that she made these agency contacts only so that she could "share[]" information that was "important to the public interest" based on "her reasonable belief that said information was shared with someone authorized to take action." (Emphasis omitted.)

¶71 Despite clear statements from OLR and the Waunakee Police Department that there was nothing further for those agencies to do about her complaints, Fueger continued to make the same allegations against Scoll and Remeika to those offices. We agree with Scoll that a jury could consider those further contacts to be "excessive" and an abuse of the public interest privilege.

### C. Reckless Disregard as to Falsity.

¶72 As noted earlier, Scoll also argues that Fueger forfeited her two asserted privileges because she acted with "knowledge or reckless disregard as to the falsity of" her allegedly defamatory statements. *See Vultaggio*, 215 Wis. 2d

326, ¶9 (citing RESTATEMENT (SECOND) OF TORTS §§ 600-602 (1977)). "Reckless disregard as to truth or falsity exists when there is a high degree of awareness of probable falsity or serious doubt as to the truth of the statement." *Olson*, 188 Wis. 2d at 39 (quoting RESTATEMENT (SECOND) OF TORTS § 600(a) cmt. b (1977)).

¶73 In light of our decision that there are jury issues as to whether Fueger abused the asserted privileges, and because abuse of any one of the conditions is sufficient to forfeit a privilege, *Vultaggio*, 215 Wis. 2d 326, ¶9, we need not reach this issue. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶74 In sum, there are genuine issues of material fact which require a trial about whether Fueger has abused either of her asserted privileges.

¶75 We add that our decisions regarding whether the allegedly defamatory statements of Fueger can be understood as having a defamatory meaning, whether a privilege applies to such statements, and whether a jury could reasonably determine that Fueger has abused the privileges she asserts, are based on the appellate record made in the circuit court before this appeal. This opinion does not constrain decisions of the circuit court, or a jury, on remand based on the state of the record as it develops after remand.

## CONCLUSION

¶76 For the foregoing reasons, the order of the circuit court is reversed. This matter is remanded to the circuit court to deny Fueger's motion for summary judgment and for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.